## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DIANE PEREZ, *individually and on behalf of all others similarly situated*, | : : : : | **Civil Action No. 19-cv-7752 (JXN) (ESK)** |
| Plaintiffs, | : : | |
| v. | : : | **OPINION** |
| EXPRESS SCRIPTS, INC., and EXPRESS SCRIPTS HOLDING COMPANY | : : : | |
| Defendants. | : : | |

**NEALS**, District Judge:

This matter comes before the Court upon the filing of three motions: 1) Defendants', Express Scripts, Inc., and Express Scripts Holding Company (collectively, "ESI," "Express Scripts," or "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, ECF No. 85; to which Plaintiff Diane Perez ("Plaintiff," or "Perez") filed opposition, ECF No. 87; to which Defendants filed a reply, ECF No. 89; 2) Plaintiff's Motion for Conditional Class Certification, ECF No. 70; to which Defendants filed opposition, ECF No. 77; to which Plaintiff's replied, ECF No. 80; and 3) Plaintiff's Motion for Equitable Tolling of the FLSA Statute of Limitations, ECF No. 81; to which Defendants filed opposition, ECF No. 84; to which Plaintiff replied, ECF No. 86. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Defendants' motion for summary judgment (ECF No. 85) is **DENIED**, and Plaintiff's Motions for Conditional Class Certification (ECF No. 70) and for Equitable Tolling of the FLSA Statute of Limitations (ECF No. 81) are **GRANTED**.

## I.       BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a Paterson, New Jersey resident who was previously employed by ESI in Franklin Lakes, New Jersey. First Amended Complaint ("FAC") ¶ 10, ECF No. 47. ESI is a pharmacy benefits manager with its principal place of business in St. Louis, Missouri, and a facility in Franklin Lakes, New Jersey, which employs approximately 2,000 persons. *Id.* ¶ 14. In 2005, Plaintiff began her employment with Medco Health Solutions Inc., which was acquired by ESI in 2012. *Id.* ¶ 11. From late 2008 through 2018, Plaintiff was employed as a manager in ESI's Commercial Member Communications Marketing Department. *Id.*

From 2016 through her resignation on January 26, 2018, Plaintiff was a "Senior Program Communications Manager" at Express Scripts and was classified at pay grade level I.[1]  (*See* Perez Deposition Transcript ("Perez Dep. Tr.") at 18:17-18, attached as Exhibit B to the Anderson Decl.); ECF No. 70-4. Despite her title, Plaintiff had no actual managerial responsibilities, "didn't supervise any other person" at Express Scripts (*Id*. at 18:19-22) and had no authority to hire employees or exercise discretion with respect to the company budget. (*Id*. at 18: 4-8). In addition, Plaintiff did not interview other candidates for employment positions (*Id*. at 19:1-4); she did not sit in on interviews of candidates for employment positions (*Id*. at 19:5-7); she did not participate in hiring decisions (*Id*. at 19:8-10); she did not discipline any employees at the company (*Id*. at 19:11-13); she did not participate in the disciplinary process for employees at the company (*Id*. at 19:14-17); she did not terminate any employees at the company (*Id*. at 19:18-20); she did not participate in a decision to terminate an individual's employment with the company (*Id*. at 19: 21-24); she did not conduct a performance evaluation of another employee (*Id*. at

--------

[1] According to Plaintiff, her total earnings at Express Scripts was $115,791.32 in 2016 (Perez Dep. Tr. at 13:9-16) and $116,477.07 in 2017.  (*Id*. at 12:15-21)

19:15, 29: 20:1-2); she did not participate in a performance evaluation (*Id*. at 20:20-23); she did not participate in an individual's salary review (*Id*. at 20:24-25, 21:1); she did not make a decision on a promotion or provide input on a promotion (*Id*. at 21: 2-5); and she did not have contact with Express Scripts' clients. (*Id*. at 118: 15-19).

Plaintiff, like thousands of other employees with the title "manager" at Express Scripts, was internally designated as an "Individual Contributor," as opposed to a "People Leader." Individual Contributors at Express Scripts could be given the title of "manager" and thus, be exempt, salaried employees, but Individual Contributors lacked actual managerial responsibilities. *See* Deposition Transcript of Susan Weilbaecher, dated January 20, 2021 ("Weilbaecher Dep. Tr.") attached as Exhibit C to the Anderson Decl., at 124:1-12; ECF No. 70-5. Despite having a manager title, Plaintiff and other Individual Contributors at Express Scripts had no employees reporting to them, had no responsibility for the performance reviews of other employees, had no ability to hire or fire employees, and no input as to employees' salary. *See id.* at 106:9–107:14; 124:1-4. The Individual Contributors, moreover, had no authority to discipline employees or direct the work of others. *See* Deposition Transcript of Leslie Boston dated January 26, 2021 ("Boston Dep. Tr.") attached as Exhibit D to the Anderson Decl., at 135: 4-22; 136: 8-9; 141:14-19; 142: 1-7; ECF No. 70-6; *see also*, Deposition Transcript of Linda Bridge dated January 12, 2021 ("Bridge Dep. Tr."), attached as Exhibit E to the Anderson Decl., at 31:14-17; 34: 4-24; ECF No. 70-7 (all of the managers in her department, including Perez, lacked authority to hire, fire, or promote employees, did not provide input on payroll, budget, and supply purchases, and did not plan for the safety of other employees.)

Plaintiff contends that, in contrast, the employees that Express Scripts designated as "People Leaders" were the *de facto* managers with supervisory authority of other employees.

Weilbacher Dep. Tr. at 50: 24-25; 51:1-5.  The People Leaders had direct reports at Express Scripts and directed the work of others; they "evaluate a person' s performance and give them that performance review,"  Boston Dep. Tr. at 133: 4-25, and "tell them what their job responsibilities are and what they are being held accountable for. . .."  *Id*. at 133:25-134:1.  The People Leaders, unlike the Individual Contributors, assigned work, responded to employee complaints, disciplined employees, selected tools and inventory (depending on their functional area) and hired and fired employees.  *Id*. at 134:3-24; 135: 1-22.

Express Scripts maintains a written job description for every position, which indicates, *inter alia*, whether that position is an Individual Contributor or a People Leader.  Deposition Transcript of Rebecca Williams dated January 14, 2021 ("Williams Dep. Tr.") attached as Exhibit F to the Anderson Decl. at 86: 1-4; 87: 14-25; ECF No. 70-8  ("our job codes are set up to be either an individual contributor job code so we know that they . . . are not a supervisor, . . . And then we have job codes that are responsible for supervising people. . .  we would have individual contributor job codes and supervisor or people leader job codes." Boston Dep. Tr. at 56:17-25; 59: 5-11 (there is a position description and a job description document for every job at Express Scripts); 133:4-7 (the job description indicates whether an employee is an individual contributor or a people leader.).

Perez's primary job function was assisting in the assembly of the letter templates which informed Express Scripts' clients of prescription drug changes.  (Perez Dep. Tr. at 33; 73: 21-25; 74:1-25, Anderson Decl. Ex. A).  Perez was required to make sure the letters were completed within set time frames and that the mailing deadlines, which were determined by the separate product team, were met.  (*Id*. at 33).  She did the same type of work every day. (*Id*. at 32:1-2). In performing her work, Perez was required to follow standard operating procedures and "the

quality control requirements that the department set." (*Id*. at 36: 10-14; 37:5-8, Anderson Decl. Ex. A). Perez was also required to follow "any special requirements that the product team has said." (*Id*. at 38:8-16). Perez testified that she would "follow the process that I've been trained to follow, which is, . . . taking the [letter] request to the different stages and having [the letter] created to their specifications." (*Id*. at 40:17-22). She testified that she did not actually "create" the communications, but instead followed a standard protocol to help assemble the mass mailings. (*Id*. at 40:23-25). Perez had no input concerning the timelines or the deadlines for the mailings. (Perez Dep. Tr. at 43:22-25, Anderson Decl., Ex. A). Nor did she have input as to the content of the mailings. (*Id.* at 56: 25, 57:5-8). She testified, "I'm not writing anything, I'm not designing anything." (*Id.* at 94: 23-24).

During Perez's tenure, Express Scripts was developing a program titled the "Outreach Manager," which was supposed to automate much of her work. (*See id.* at 60:18-21; 61: 9-13, 23-25, 85:9-21).

ESI is a pharmacy benefit management organization. Defendants' Statement of Undisputed Material Facts ("DSUM"), ¶ 1., ECF No. 85-1; (*See* Bridge Dep. Tr. at 73:22 to 74:2, Ex. A to the Certification of James M. McDonnell ("JMM Cert."); Weilbaecher Dep. Tr. at 13:21-25, 14:22 to 15:3, Ex. B to JMM Cert.). The Company manages and administers pharmacy benefits programs for employers, commercial health plans, and governmental programs and entities. DSUM, ¶ 2.; (*See* Bridge Dep. Tr. at 73:22 to 74:2, Ex. A to JMM Cert.; Weilbaecher Dep. Tr. at 15:13-17, Ex. B to JMM Cert.). The Company, among other offerings, creates and markets pharmacy benefit plans to its customers for use by members (i.e., employees of ESI customers or plan beneficiaries). (Declaration of Leslie Boston ("Boston Decl.") at ¶ 14, ECF No. 77-2, Ex. S to JMM Cert.); DSUM, ¶ 3. ESI clients and the employees of those clients (i.e., "members") require notices or

communications regarding, among other topics, revised benefit structures, changes to formulary (i.e., prescription drugs covered by the health plan), availability of prescription medications through alternate means (e.g., online, home delivery), and custom communications. (Bridge Dep. Tr. at 24:13 to 26:2, Ex. A to JMM Cert.; Transcript of Deposition of Plaintiff ("Pl.'s Dep. Tr.") at 33:2-5; 33:9-17, Ex. C to JMM Cert.; Weilbaecher Dep. Tr. at 39:5-19; 40:21 to 41:5; 47:6-13; 60:6-21, Ex. B to JMM Cert.). DSUM, ¶ 4. The communications also could be to inform a member of availability within their insurance benefit structure or something critical to their healthcare. (Weilbaecher Dep. Tr. at 38:20 to 39:2, Ex. B to JMM Cert.). DSUM, ¶ 5. Other communications promote an ESI product, such as ESI's home delivery pharmacy for members. (Weilbaecher Dep. Tr. at 39:5-19, Ex. B to JMM Cert.). Plaintiff managed the overall member communication process from end-to-end in her role as Senior Communications Manager ("SCM"). (Bridge Dep. Tr. at 21:20 to 22:4, Ex. A to JMM Cert.; Boston Decl., at ¶ 5, ECF No. 77-2, Ex. S to JMM Cert.; Sr. Communications Manager Job Description, D-0033 to D-0037, Ex. D to JMM Cert.). DSUM, ¶ 6, 7. On April 1, 2016, ESI promoted Plaintiff to the SCM position. (Plaintiff's Compensation History, D-0043, Ex. F to JMM Cert.). DSUM, ¶ 10. In her role with ESI, Plaintiff "manag[ed] commercial direct mail / email campaigns and other communications and marketing initiatives." (Pl.'s Resume, Perez 101 to Perez 102, Ex. E to JMM Cert.); DSUM, ¶ 14.[2] Plaintiff also "[p]lanned, developed, and executed on full-scale project plans, working with teams of 100+

---

[2] In support of their Summary Judgment motion, Defendants often cited to statements contained within Plaintiff's resume and LinkedIn Profile. Federal Rule of Civil Procedure 56 states that motions for and in opposition to summary judgment may be supported by affidavits; unsworn statements, such as those relied upon in the instant matter, fail to meet this requirement. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1609 n. 17, 26 L.Ed.2d 142 (1970) (noting that unsworn allegations do not satisfy requirements of Fed. R. Civ. P. 56(e)). The statute, 28 U.S.C. § 1746, provides that when a matter is required to be supported by a sworn affidavit, the matter can instead be supported by an unsworn "declaration, certificate, verification, or statement," as long as the statement is made under penalty of perjury and dated.  Thus, while an unsworn statement may be considered on summary judgment, an unsworn statement that has not been made under penalty of perjury cannot. *United States ex rel. Doe v. Heart Solution, PC*, 923 F.3d 308,315 (3d Cir. 2019).

creative, operations, IT and other professionals and operational budgets of $2M - $5M." (Pl.'s Resume, Perez 101 to Perez 102, Ex. E to JMM Cert.); DSUM, ¶ 15.[3] She "project managed numerous cyclical formulary campaigns with million-dollar budgets." (Pl.'s LinkedIn Profile, D-0232 to D-0234, Ex. G to JMM Cert.); DSUM, ¶ 16.[4] She further "[o]versaw quality control, developed standard operating procedures and best practices and ensured adherence to all branding, client and regulatory requirements." (Pl.'s Resume, Perez 101 to Perez 102, Ex. E to JMM Cert.; Pl.'s LinkedIn Profile, D-0232 to D0234, Ex. G to JMM Cert.); DSUM, ¶ 17.[5] She "[p]layed key roles in content development and governance management for high-profile projects including: a multi-million-dollar Outreach Manager Program . . ., Walmart Disruption campaign, Formulary Notification email campaign and an AUM email campaign." (Pl.'s Resume, Perez 101 to Perez 102, Ex. E to JMM Cert.); DSUM, ¶ 18.[6] Plaintiff also "[d]eveloped numerous project management and reporting tools." (Pl.'s Resume, Perez 101 to Perez 102, Ex. E to JMM Cert.); DSUM, ¶ 19.[7] She further "helped establish project management plan requirements for the development of a highly visible cost-saving proprietary initiative, whose potential promised exponential cost-savings and efficiencies." (Pl.'s LinkedIn Profile, D-0232 to D-0234, Ex. G to JMM Cert.).[8] This required that Plaintiff have an in-depth knowledge of the communications she oversaw, including knowledge about the product, branding, and trademarks. (Bridge Dep. Tr. at 82:1-9, Ex. A to JMM Cert.). Using this knowledge, Plaintiff would make or suggest edits to the communications if necessary. (Bridge Dep. Tr. at 82:1-9, Ex. A to JMM Cert.); DSUM, ¶ 26. The Outreach Manager's purpose included streamlining the communications process. (Pl.'s Dep. Tr.

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

85:8-13, Ex. C to JMM Cert.) DSUM, ¶ 41.

On March 4, 2019, Plaintiff initiated this action against ESI alleging various claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New Jersey Wage and Hour Law, N.J.S.A. § 34:12-56, *et seq*. ("NJWHL") and the New Jersey Wage and Hour Regulations N.J.A.C. § 12:56-5.1, *et seq*. On April 10, 2020, Plaintiff filed her FAC. In the FAC, Plaintiff alleges that ESI violated the FLSA and NJWHL by misclassifying her and similarly situated employees as exempt "managers" and failing to pay these employees for all the hours worked, failing to pay overtime in a timely manner, and failing to pay the legally required amount of overtime compensation required by law for all hours works over forty (40) in a work week for their work at ESI. FAC ¶¶ 1–3; Pl.'s Br. at 5, ECF No. 70-1. On April 24, 2020, Defendants moved to dismiss the FAC [ECF No. 51], and on December 23, 2020, the Court denied Defendants' motion to dismiss the FAC without prejudice [ECF No. 60]. On January 20, 2021, Defendants filed their Answer [ECF No. 67]. On February 19, 2021, Plaintiff moved for conditional certification. [ECF No. 70]. Discovery has been bifurcated, with class and conditional certification related discovery scheduled to close May 31, 2021 [ECF No. 79], and merits discovery to commence after a ruling on the conditional certification motion. [ECF No. 21].

Prior to the close of class and conditional certification discovery, and before the commencement of merits discovery, Express Scripts moved for summary judgment [ECF No. 85] on the grounds that (1) the administrative exemption and the highly compensated employee exemption apply to Perez, and (2) the record is void of any fact showing that ESI willfully violated the FLSA. Plaintiff has moved for Conditional Class Certification [ECF No. 70], and for Equitable Tolling of the FLSA Statute of Limitations [ECF No. 81].

The Court will address each motion in turn.

## II.    DISCUSSION

### A.  Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the *non-moving* party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted) (emphasis added).

The *moving party bears the initial burden* of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322 (emphasis added). If the movant satisfies its initial burden, the nonmoving party cannot rest upon mere allegations in the pleadings to withstand summary judgment; rather, the nonmoving party "must counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366. Specifically, the nonmoving party "must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001); *see Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995)

("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case."). Thus, "a mere 'scintilla of evidence' in the nonmovant's favor" is insufficient to create a genuine issue of fact." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted); *see Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 45 (3d Cir. 2017) ("There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party."). Ultimately, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks v. Kyler*, 204 F.3d 102, 105 n. 5 (3d Cir. 2000).

To be material, a disputed fact must be one that might "affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Fed. R. of Civ. Pro. 56 provides that facts both for and in opposition to summary judgment may be supported by affidavits; unsworn statements fail to meet this requirement. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1609 n. 17, 26 L.Ed.2d 142 (1970) (noting that unsworn allegation does not satisfy requirements of Fed. R. of Civ. P. 56(e)). We draw all reasonable inferences in favor of the non-movant.

The FLSA requires employers to compensate employees at a premium rate of time-and-one-half of an employee's regular hourly rate for all hours worked in excess of forty (40) unless the employee receives weekly compensation of $455 or more and performs the duties of a bona fide administrative, executive, professional or outside sales employee. *See* 29 U.S.C. § 213(a)(1); *see also* 29 C.F.R. § 541.600. Alternatively, if an employee earns more than $100,000 in total annual compensation, she will be deemed exempt so long as she customarily and regularly

performs any one or more of the duties of an executive, administrative or professional employee. *See* 29 C.F.R. § 541.601(a). The FLSA is remedial and is construed broadly, but exemptions to it are construed narrowly, i.e., against the employer. *Smith v. Johnson and Johnson*, 593 F.3d 280, 285 (3d. Cir. 2010), citing *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). The burden of proof to establish that its employees come within the scope of an overtime exemption is on the employer. *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d Cir. 2006) citing *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 412 (3d Cir. 1992). Congress has empowered the Secretary of Labor to define and delimit the terms of the FLSA exemptions by regulation. 29 U.S.C. § 213(a). The Secretary's regulations, which were promulgated using notice-and-comment procedures, have controlling weight unless found to be arbitrary, capricious, or manifestly contrary to the statute. *See Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984).

Under the administrative employee exemption, anyone employed in a bona fide administrative capacity is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). The Secretary has defined an administrative employee as someone:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week ... exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. §§ 541.200.

Indeed, "[i]n crafting the highly compensated exemption, the Department of Labor made

it easier on both employers and courts" because no detailed analysis of the plaintiff's job duties need be conducted. *Smith,* 956 F.3d at 688. This analysis must consider "all the facts involved in the particular employment situation in which the question arises."  29  C.F.R. § 54l.202(b). These  three  conditions  are  "explicit  prerequisites  to  exemption,  not  merely  suggested guidelines for judicial determination of the employer's status." *Arnold v. Ben Janowsky, Inc.,* 361 U.S. 388, 392, 80 S. Ct. 453 (1960).

To meet the "perform[s] work directly related to assisting with the running or servicing of the business" requirement, an employee must perform work directly related to assisting with the running  or  servicing  of  the  business,  as  distinguished,  for  example,  from  working  on  a manufacturing production line or selling a product in a retail or service establishment. 29 C.F.R. § 541.201(a).

The Secretary also provides specific examples of the types of qualifying work that meet the exemption:

> (a)  Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance;  quality  control;  purchasing;  procurement; *advertising*;  *marketing*;  research;  safety  and  health; personnel  management;  human  resources;  employee benefits;  labor  relations;  public  relations,  government relations;  computer  network,  internet  and  database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

29 C.F.R. § 541.201(b) (emphasis added). An employee may also qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the *employer's* customers. Thus, for example,

employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt. 29 C.F.R. § 541.201(c).

The third "administrative exemption" requirement states that the employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. Department of Labor regulations explain that "the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).

While time spent performing exempt work is a "useful guide," it is not the "sole test" of primary duty. *See* 29 C.F.R. § 541.700 (b). Courts apply a qualitative standard, looking to "the relative importance of the [exempt] duties as compared with the employee's nonexempt duties," and "whether the [exempt] activities are critical to the successful operation of the enterprise." *Itterly v. Family Dollar Stores, Inc.*, 606 F. App'x 643, 646 (3d Cir. 2015). "An employee's primary duties are directly related to an employer's management or general business operations when the employee 'perform[s] work directly related to assisting with the running or servicing of the business.'" *See Swartz,* 429 F. App'x at 104-05 (citing 29 C.F.R. § 541.201(a)). Moreover, "[e]mployees can exercise discretion and independent judgment even when their recommendations are subject to review." *Hickton v. Enter. Rent-A-Car Co.*, 2012 U.S. Dist. LEXIS 118784, at *88 (W.D. Pa. Aug. 22, 2012) (citing 29 C.F.R. § 541.202(c)). The exercise of discretion and independent judgment with respect to matters of significance in general "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "Matters of significance" refers "to

the level of importance or consequence of the work performed." *Id.* In determining whether an employee exercises discretion and independent judgment, the regulations provide a non-exhaustive list of factors to consider, including: [1] whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; [2] whether the employee carries out major assignments in conducting the operations of the business; [3] whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; [4] whether the employee has authority to commit the employer in matters that have significant financial impact; [5] whether the employee has authority to waive or deviate from established policies and procedures without prior approval; [6] whether the employee has authority to negotiate and bind the company on significant matters; [7] whether the employee provides consultation or expert advice to management; [8] whether the employee is involved in planning long- or short-term business objectives; [9] whether the employee investigates and resolves matters of significance on behalf of management; and [10] whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances. 29 C.F.R. § 541.202(b). In addition, the preamble to the regulations also mention other factors such as the coordination with other internal and external entities on behalf of the employer. *See* Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22, 144 (Apr. 23, 2004). "An employee need not qualify under all ten factors: '[f]ederal courts generally find that employees who meet at least two or three of these factors are exercising discretion and independent judgment, although a case-by-case analysis is required.'" *Smith v. Johnson & Johnson*, 2008 U.S. Dist. LEXIS 104952, at *32 (D.N.J. Dec. 30, 2008) (citation omitted).

The fact that an employee's decisions are reviewed by a superior is immaterial. 29 C.F.R. § 541.202(c). Also, "[e]mployees may qualify under the administrative exemption if more than one person performs a task, or if an employee receives meaningful supervision." *Id.* (citing 29 C.F.R. § 541.202(c)-(d)). Thus, "[i]n order to evaluate the [second and third prong] of the administrative exemption analysis . . . the Court must first examine the nature of [the employer's] business." *Antiskay v. Contemporary Graphics & Bindery Inc.*, 2013 U.S. Dist. LEXIS 180323, at *26 (D.N.J. Dec. 26, 2013).

The parties agree that Perez's salary qualifies her for the administrative employee exemption but dispute her qualification for that exemption under the remaining two sections.[9] Defendant ESI bears the initial burden of demonstrating the absence of a genuine issue of material fact that Plaintiff comes within the scope of an overtime exemption. *Celotex*, 477 U.S. at 322; *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d. Cir. 2006) (citing *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 412 (3d Cir. 1992)). In support of its motion, ESI has asserted a series of facts derived from Plaintiff's resume and LinkedIn profiles, which as unsworn statements do not meet the standards of Fed. R. Civ. P. 56 to constitute material facts.[10] *See Adickes*, 398 U.S. 144, 158 n. 17 (1970) (noting that unsworn allegations do not satisfy requirements of Fed. R. Civ. P. 56(e)). Accordingly, these allegations will not be considered by the Court as material facts presented.

ESI is a pharmacy benefit management organization (DSUM, ¶ 1; ECF No. 85-1) that

---

[9] Plaintiff acknowledged that her compensation from ESI exceeded $100,000 in 2016 and 2017. (*See* Pl.'s Br. at 3, n.1, ECF No. 70-1). Lastly, in 2018, Plaintiff's salary of 102,216.81 alone exceeds the proportional total annual compensation threshold as it is greater than $100,000. (SOF ¶ 49).

[10] *See supra* notes 3 – 9 and accompanying text.

manages and administers pharmacy benefits programs for employers, commercial health plans, and governmental programs and entities. DSUM, ¶ 2.; (*See* Bridge Dep. Tr. at 73:22 to 74:2, Ex. A to JMM Cert.; Weilbaecher Dep. Tr. at 15:13-17, Ex. B to JMM Cert.). The Company, among other offerings, creates and markets pharmacy benefit plans to its customers for use by members (i.e., employees of ESI customers or plan beneficiaries). (Declaration of Leslie Boston ("Boston Decl."), at ¶ 14, ECF No. 77-2, Ex. S to JMM Cert.); DSUM, ¶ 3. ESI clients and the employees of those clients require notices or communications regarding, among other topics, revised benefit structures, changes to formulary (i.e., prescription drugs covered by the health plan), availability of prescription medications through alternate means (e.g., online, home delivery), and custom communications. (Bridge Dep. Tr. at 24:13 to 26:2, Ex. A to JMM Cert.; Transcript of Deposition of Plaintiff ("Pl.'s Dep. Tr.") at 33:2-5; 33:9-17, Ex. C to JMM Cert.; Weilbaecher Dep. Tr. at 39:5-19; 40:21 to 41:5; 47:6-13; 60:6-21, Ex. B to JMM Cert.). DSUM, ¶ 4. The communications also could be to inform a member of availability within their insurance benefit structure or something critical to their healthcare. (Weilbaecher Dep. Tr. at 38:20 to 39:2, Ex. B to JMM Cert.). DSUM, ¶ 5. Other communications promote an ESI product, such as ESI's home delivery pharmacy for members. (Weilbaecher Dep. Tr. at 39:5-19, Ex. B to JMM Cert.). Defendant asserts that Plaintiff managed the overall member communication process from end-to-end in her role as an SCM. (Bridge Dep. Tr. at 21:20 to 22:4, Ex. A to JMM Cert.; Boston Decl., at ¶ 5, ECF No. 77-2, Ex. S to JMM Cert.; Sr. Communications Manager Job Description, D-0033 to D-0037, Ex. D to JMM Cert.). DSUM, ¶ 6,7. Defendants further assert that Perez's responsibilities required that Plaintiff have an in-depth knowledge of the communications she oversaw, including knowledge about the product, branding, and trademarks. (Bridge Dep. Tr. at 82:1-9, Ex. A to JMM Cert.). Using this knowledge, Plaintiff would make or suggest edits to the communications if

necessary. (Bridge Dep. Tr. at 82:1-9, Ex. A to JMM Cert.); DSUM, ¶ 26. The Outreach Manager's purpose included streamlining the communications process. (Pl.'s Dep. Tr. 85:8-13, Ex. C to JMM Cert.) DSUM, ¶ 41. Plaintiff's primary duty was management of the end-to-end process of thousands of communications to ESI's clients' members from requests coming in to mailing those communications. (SOF ¶¶ 7, 24, 27-35). The communications involved matters of significance including, *inter alia*, changes to benefit structures, additions, or deletions from covered pharmaceuticals, or methods to obtain covered prescription medications. (SOF ¶¶ 4-6). Plaintiff managed the complete process for communications, setting the deadlines, tracking work, and updating progress. (SOF ¶¶ 23, 29, 38). As an accomplishment in 2016, Plaintiff asserted "[d]eveloping and nurturing relationships with stakeholders and key business areas by learning and understanding their process and limitations[.]" (SOF ¶ 23). She also "[o]versaw quality control, developed standard operating procedures and best practices and ensured adherence to all branding, client and regulatory requirements." (SOF ¶ 17).

The facts alleged by ESI do not demonstrate whether Plaintiff had authority regarding management policies or operating practices; whether her activities carried out major assignments in conducting the operations of the business; performed  work that affects business operations to a substantial degree; authority to commit the employer in matters with significant financial impact; any authority regarding established policies and procedures without prior approval; any authority to bind the company on significant matters; whether the employee provides consultation or expert advice to management; involvement in planning business objectives or with the matters of significance on behalf of management; representation of the company in handling complaints, arbitrating disputes or resolving grievances. 29 C.F.R. § 541.202(b). An employee who meets at least two or three of these factors can be found to exercise discretion and independent judgment.

The FLSA is remedial and is construed broadly, but exemptions to it are construed narrowly, i.e., against the employer. *Smith v. Johnson and Johnson,* 593 F.3d 280, 285 (3d. Cir. 2010) (citing *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008)). At best, the current record shows numerous disputed issues of material fact as to whether the requirements of these exemptions can be satisfied with respect to Perez.

Reviewing the record in the light most favorable to the Plaintiff, ESI has not met its initial burden of proof to establish that Plaintiff comes within the scope of an overtime exemption. *See Davis,* 453 F.3d 554, 556 (3d. Cir. 2006) (citing *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 412 (3d Cir. 1992)).

Accordingly, Defendant's motion for summary judgment must be denied.

### B.  Conditional Class Certification

Plaintiff seeks conditional certification for a collective action and an order from the Court approving circulation of the notice of pendency of this collective action to putative class members pursuant to the FLSA, 29 U.S.C. § 216(b).

Enacted in 1938, the FLSA, 29 U.S.C. § 201 *et seq.*, was designed "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). Under the "collective action" mechanism set forth in 29 U.S.C. § 216(b), an employee alleging an FLSA violation may bring an action on "behalf of himself . . . and other employees similarly situated," subject to the requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 (3d Cir.

2011), *rev'd on other grounds*, *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013).

Prior to 1947, the FLSA permitted an aggrieved employee to "designate an agent or representative to maintain such action for and on behalf of all employees similarly situated." *Martino v. Mich. Window Cleaning Co.*, 327 U.S. 173, 175 n. 1, 66 S.Ct. 379, 90 L.Ed. 603 (1946) (quoting Fair Labor Standards Act of 1938, Pub.L. No. 75–718, § 16(b), 52 Stat. 1060, 1069 (1938)). But in response to "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome," Congress amended the Act to eliminate "representative action by plaintiffs not themselves possessing claims." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *see also* Portal–to–Portal Act of 1947, Pub.L. No. 80–49, § 5(a), 61 Stat. 84, 87 (1947). Further altering the collective action procedure in § 216(b), Congress inserted a requirement that similarly situated employees must affirmatively "opt in" to an ongoing FLSA suit by filing express, written consents in order to become party plaintiffs. *Symczyk*, at 192 (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 173).

Courts in this Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA. *Camesi v. University of Pittsburgh Medical Center*, 729 F.3d 239, 243 (3d. Cir. 2013) (citing *Zavala v. Wal–Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir. 2012)). The Court applies a "fairly lenient standard" at the first step and makes a preliminary determination whether the named plaintiff(s) have made a "modest factual showing" that the employees identified in their complaint are "similarly situated." *Zavala*, at 536 & n. 4. If the plaintiffs have satisfied their burden, then the court will "conditionally certify" the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery. *Id.* at 536. At the second stage, with the benefit of discovery, "a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted-

in to the collective action is in fact similarly situated to the named plaintiff." *Camesi*, at 243 (citing *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds, Symczyk,* 133 S.Ct. at 1526).

While Plaintiff's burden for conditional certification is relatively low, some discovery is typically necessary. *See Elliott v. Amspec Servs., LLC*, 2011 U.S. Dist. LEXIS 136503, at *5-6 (D.N.J. Nov. 29, 2011) (noting that evidence is typically before the court when plaintiffs seek conditional certification, but that "the merits of Plaintiff's claim need not be evaluated and discovery need not be completed."); *Armstrong v. Weichert Realtors*, 2006 U.S. Dist. LEXIS 31351, at *3-4 (D.N.J. May 19, 2006) ("To make a meaningful decision about whether certain people are similarly situated, this Court must have, as a factual foundation, information about who is in the potential class and the basis for inferring that the potential members are similarly situated.").

From 2016 through her resignation on January 26, 2018, Perez was a "Senior Program Communications Manager" at Express Scripts and was classified at pay grade level I.[11]  (*See* Perez Deposition Transcript ("Perez Dep. Tr.") at 18:17- 18, attached as Exhibit B to the Anderson Decl.); ECF. No. 70-4.

Plaintiff has set forth in her FAC, her deposition testimony, the deposition testimony of other Express Scripts employees, and by affidavits submitted, evidence which satisfies her burden on this motion--which requires only a "modest factual showing" that the other Express Scripts employees are similarly situated to her with respect to the overtime claims. *See Symczyk*, 656 F.3d at 193.

---

[11] *See supra,* note 2.  According to Plaintiff, her total earnings at Express Scripts was $115,791.32 in 2016 (Perez Dep. Trans. at 13:9-16) and $116,477.07 in 2017.  (*Id.* at 12:15-21)

Therefore, to facilitate the efficient management of this litigation, prompt notice and the opportunity to "opt in" to this action to seek similar redress should be provided to the following persons:

> All current and former Express Scripts employees assigned the title "Managers," compensated at pay grades I and below, and designated as Individual Contributors.

Pl.'s Br., ECF No. 70-1 at 6.

### C. Equitable Tolling of the FLSA Statute of Limitations

Plaintiff also moves for equitable tolling of the statute of limitations under the FLSA, 29 U.S.C. § 201, *et seq.* for the putative collective action members ("Potential Opt-ins") from April 10, 2020, the date Plaintiff filed her FAC, until the end of the opt-in period ordered by the Court, should the Court grant Plaintiff's pending motion for conditional certification and authorization of notice to Potential Opt-ins.

As this Court held in *Thompson v. Real Estate Mortg. Network, Inc.*, 2019 U.S. Dist. LEXIS 107445, at *30-31 (D.N.J. June 26, 2019), "[t]here are three classic, but nonexclusive, scenarios in which the inequity of enforcing a statute of limitations against an unwary plaintiff is so obvious that tolling may be appropriate: '(1) where the defendant has actively misled the plaintiff respecting the plaintiffs cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly [*31] in the wrong forum.'" *Id.* (quoting *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005)); *see also Santos*, 559 F.3d at 197; *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (emphasis added). Equity, however, is flexible, and the three-part test is not exhaustive. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir. 1994) ("We have instructed that there are three principal, though not exclusive, situations in which equitable

tolling may be appropriate: [reciting the three situations].") (emphasis added). Whether a statute of limitations should be tolled requires a case-specific inquiry into what is fair and in the interests of justice. *See Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1988) (equitable tolling is proper when "the principles of equity would make [the] rigid application [of a limitation period] unfair") (alterations in original). Defendants are entitled to zealously advocate on behalf of their clients and aggressive positions in discovery will not be the basis of tolling the limitations period here.

The Third Circuit provides for equitable tolling of the statute of limitations when it "is demanded by sound legal principles as well as the interests of justice." *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir. 1999). The court should grant equitable tolling "when the 'principles of equity would make rigid application [of the statute of limitations] unfair.'" *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (citing *Miller v. N.J. State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir. 1998)). Courts regularly grant equitable tolling where the statute of limitations would otherwise run on the claims of absent collective action members who, through no fault of their own, have not received timely notice of the pendency of the litigation – "when tolling is in the interest of justice." *Stickle v. SCI W. Market Support Ctr., L.P.*, 2008 U.S. Dist. LEXIS 83315, at *61-65.

Unlike the claims of members of a potential Rule 23 class, the claims of potential opt-ins to an FLSA collective action are not tolled by the filing of the complaint. Rather, the FLSA statute of limitations period for an opt-in, pursuant to 29 U.S.C. § 256(b), continues to run until the opt-in files a written consent to join the action. As a result, until the Court rules on Plaintiff's pending certification motion, Potential Opt-ins – through no fault of their own – have been and continue to be prevented from learning about the existence of this action and the ongoing expiration of their claims. *Symczyk,* 656 F.3d at 199. Accordingly, "time is of the essence because 'the

commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in.'" *Id.,* citing *Lewis v. Huntington Nat'l Bank,* 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (quoting *Musarra v. Digital Dish, Inc.,* 2008 U.S. Dist. LEXIS 110003, at \*7 (S.D. Ohio Mar. 24, 2008)); *Stickle v. SCI W. Mkt. Support Ctr., L.P.,* 2008 U.S. Dist. LEXIS 83315, at \*64-65 ("[a]s the Supreme Court noted in Hoffman-La Roche[] … , the inherent benefits of the collective action 'will disappear' if plaintiffs are not notified of the suit before their statute of limitations expires."). Accordingly, this Court and numerous others, have equitably tolled the FLSA statute of limitations in the interest of justice to allow for opt-in plaintiffs to receive notice and preserve their claims. *See, e.g.*, *DePalma v. Scotts Co.* LLC, 2017 U.S. Dist. LEXIS 8884, at \*16-19 (D.N.J. January 20, 2017); *Ornelas v. Hooper Holmes, Inc.,* No. 12–cv– 3106, 2014 U.S. Dist. LEXIS 172162, at \*11-13 (D.N.J. Dec. 12, 2014). District courts have held that the passage of time while a court decides a collective action ruling is justification enough, under "extraordinary circumstance" or "interests of justice" analysis, for application of the equitable tolling doctrine. *Id.*; *see e.g.*, *DePalma,* 2017 U.S. Dist. LEXIS 8884, at \*16-19 (D.N.J. Jan. 20, 2017) (granting motion to equitably toll FLSA statute of limitations due to procedural delays in obtaining a decision on the motion for conditional certification). Although the differences between Rule 23 class actions and FLSA § 216(b) collective actions alter the conceptual mootness inquiry, each type of action would be rendered a nullity if defendants could simply moot the claims as soon as the representative plaintiff files suit. *Symczyk,* 656 F.3d at 199. Thus, the policies behind applying the "relation back" principle for Rule 23 class actions apply with equal force to FLSA § 216(b) collective actions. *Symczyk,* 656 F.3d at 199 (citing *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 920 (5th Cir. 2008) (citations omitted)). Similarly, "Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly

been harmed by a claimed violation or violations of the FLSA by a particular employer." *Symczyk,* 656 F.3d at 199 (citing *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)). Additionally, the relation back doctrine helps safeguard against the erosion of FLSA claims by operation of the Act's statute of limitations. *Symczyk*, 656 F.3d at 199.

To qualify for relief under the FLSA, a party plaintiff must "commence" his cause of action before the statute of limitations applying to his individual claim has lapsed. *Sperling v. Hoffmann– La Roche, Inc.*, 24 F.3d 463, 469 (3d Cir. 1994). For a named plaintiff, the action commences on the date the complaint is filed. 29 U.S.C. § 256(a). For an opt-in plaintiff, however, the action commences only upon filing of a written consent. *Id.* § 256(b).

This represents a departure from Rule 23, in which the filing of a complaint tolls the statute of limitations "as to all asserted members of the class" even if the putative class member is not cognizant of the suit's existence. *Symczyk*, 656 F.3d at 199; *see also Crown, Cork & Seal Co.*, 462 U.S. at 350, 103 S.Ct. 2392 (internal quotation marks omitted). Depriving the parties and the court of a reasonable opportunity to deliberate on the merits of collective action "conditional certification" frustrates the objectives served by § 216(b). *Cf. Sandoz*, 553 F.3d at 921 (explaining "there must be some time for a[n FLSA] plaintiff to move to certify a collective action before a defendant can moot the claim through an offer of judgment"). Absent undue delay, when an FLSA plaintiff moves for "certification" of a collective action, the appropriate course…is for the district court to relate the motion back to the filing of the initial complaint. *Symczyk*, 656 F.3d at 201. In the absence of such tolling, Potential Opt-ins' claims will continue to expire prior to their receiving notice of this lawsuit and being provided the opportunity to seek relief for unpaid wages and other damages. The record is devoid of any evidence of any undue delay on Plaintiff's part. Accordingly, the Court will grant Plaintiff's

motion for equitable tolling of the statute of limitations under the FLSA for the Potential Opt-ins from April 10, 2020, the date Plaintiff filed her FAC. To establish the end date for the opt-in period, within 30 days of the filing hereof, Plaintiff shall identify the total number of Potential Opt-Ins to receive notice and a proposed reasonable time-period to accomplish service. Defendants shall have 14 days to respond thereto. If the parties cannot agree to a time-period for service, then one shall be set by the Court. *See, e.g.*, *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d. Cir. 2003). Either party shall have the ability to otherwise move by way of discovery motion to re-open/close the opt-in period based on the percentage of Potential Opt-Ins served within the opt-in period set.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 85) is **DENIED**, and Plaintiff's Motions for Conditional Class Certification (ECF No. 70) and for Equitable Tolling of the FLSA Statute of Limitations (ECF No. 81) are **GRANTED**.

An appropriate Form of Order accompanies this Opinion.


_s/ Julien Xavier Neals_____
DATED: July 28, 2022                    JULIEN XAVIER NEALS
                                        United States District Judge